**Jeffrey Linn PRIMM, Appellee,**

v.

**IOWA DEPARTMENT OF TRANSPORTATION, MOTOR VEHICLE DIVISION, Appellant.**

**No. 96–1129.**

Supreme Court of Iowa.

March 26, 1997.

Thomas J. Miller, Attorney General, David A. Ferree, Special Assistant Attorney General, and Mark Hunacek and Carolyn J. Olson, Assistant Attorneys General, for appellant.

J. Dean Keegan, Iowa City, and Jerald W. Kinnamon, Cedar Rapids, for appellee.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN, and ANDREASEN, JJ.

LARSON, Justice.

The Iowa Department of Transportation (DOT) ordered the revocation of Jeffrey Primm's driver's license for his refusal to submit to withdrawal of a specimen for chemical testing following his arrest for OWI. *See* Iowa Code § 321J.9 (1997). The district court reversed the order of revocation on the ground that Primm had not been adequately informed by the officer concerning the revocation of his license if he refused. *See* Iowa Code § 321J.8. The DOT appealed to this court, and we reverse.

On November 4, 1995, Primm was arrested for OWI and transported to the Johnson County jail, where an officer began implied consent procedures. Primm delayed his decision on taking the test while he made what appeared to the officer to be a half-hearted attempt to contact an attorney. As the two-hour period for the test was about to expire, the officer deemed Primm's continued indecision to be a refusal, and that is not an issue on appeal.

The sole issue is whether the advisory information furnished by the officer complied with these requirements of Iowa Code section 321J.8:

A person who has been requested to submit to a chemical test shall be advised by a peace officer of the following:

1. If the person refuses to submit to the test, the person's motor vehicle license or nonresident operating privilege will be revoked by the department as required by and *for the applicable period specified under section 321J.9.*

2. If the person submits to the test and the results indicate an alcohol concentration as defined in section 321J.1 of .10 or more, ... the person's motor vehicle license or nonresident operating privilege will be revoked by the department as required by and *for the applicable period specified under section 321J.12.*

(Emphasis added.)

The officer read to Primm a standard advisory form, which was intended to comply with section 321J.8. The form stated in pertinent part:

Refusal to submit to the withdrawal of a body specimen for chemical testing will result in revocation of your privilege to operate a motor vehicle for 240 days if you have not previously been revoked within the previous six years under the implied consent or drunk driving laws of this state, or for 540 days if you have one or more revocations within the previous six years.

. . . .

If you consent to chemical testing and the test results indicate an alcohol concentration of ten hundredths or more, the department shall revoke your privilege to operate a motor vehicle for a period of 180 days if you have no revocation within the previous six years under the drunk driving or implied consent law, or for one year if you have one or more previous revocations under those provisions.

Section 321J.8 requires that the driver be advised of "the applicable period" of revocation as provided by Iowa Code sections 321J.9 and 321J.12. Section 321J.9(2) (applicable on refusal of test) provides:

A person whose motor vehicle license or nonresident operating privileges are revoked for two hundred forty days under subsection 1, paragraph "a", *shall not be eligible for a temporary restricted license for at least ninety days after the effective date of the revocation.* A person whose motor vehicle license or nonresident operating privileges are revoked for five hundred forty days under subsection 1, paragraph "b", *shall not be eligible for a temporary restricted license for at least one year after the effective date of the revocation.*

(Emphasis added.) Section 321J.12(2) (applicable on failure of the test) provides:

A person whose motor vehicle license or nonresident operating privileges have been revoked under subsection 1, paragraph "a", *shall not be eligible for any temporary restricted license for at least thirty days after the effective date of the revocation.* A person whose license or privileges have been revoked under subsection 1, paragraph "b", for one year *shall not be eligible for any temporary restricted license for one year after the effective date of the revocation.*

(Emphasis added.)

■ The issue is how much of the contents of sections 321J.9 and 321J.12 must be conveyed to the driver, and this turns on our interpretation of section 321J.8. We review a district court's interpretation of a statute for errors of law. *State v. Kjos,* 524 N.W.2d 195, 196–97 (Iowa 1994). In such matters, we grant an agency only limited deference; the final decision is for this court. *Cobb v. Employment Appeal Bd.,* 506 N.W.2d 445, 447 (Iowa 1993); *Suluki v. Employment Appeal Bd.,* 503 N.W.2d 402, 404 (Iowa 1993).

According to Primm, the "applicable period" of revocation for refusal to take the test is not merely the period of revocation provided by Iowa Code section 321J.9(1) (240 days if no previous revocation in prior six years or 540 days for a person with such a record). The "applicable period" of revocation for refusal, he claims, might be affected by the issuance of a temporary restricted license, and he should have been advised that he could not receive a temporary license for at least ninety days, or one year, depending on his record.

■ We reject this interpretation. Section 321J.8 provides that the driver be advised of the applicable period of *revocation;* it does not require advice concerning the driver's *period of ineligibility* for the issuance of the work permit. They are clearly not the same; section 321J.8 requires advice concerning the former, but not the latter. *See Collins v. King,* 545 N.W.2d 310, 312 (Iowa 1996) (The court has "long accepted

the maxim that express mention of one thing in a statute implies exclusion of others."); *Barnes v. Iowa Dep't of Transp.*, 385 N.W.2d 260, 263 (Iowa 1986) (same).

The district court relied on two Nebraska cases, *Perrine v. Nebraska Department of Motor Vehicles*, 249 Neb. 518, 544 N.W.2d 364 (1996), and *Smith v. Nebraska Department of Motor Vehicles*, 248 Neb. 360, 535 N.W.2d 694 (1995), in holding that a driver must be informed of all license implications of a refusal. However, those cases must be distinguished because the Nebraska statute is much broader, requiring that a driver be advised of all of the "consequences" of the refusal, not that he merely be advised of the period of revocation.

Our court of appeals has rejected an argument analogous to Primm's in *Smith v. Iowa Department of Transportation*, 523 N.W.2d 607 (Iowa App.1994). In *Smith* the driver argued that section 321J.8 was vague because it provided no guidance to a driver as to how the six-year period was to be computed for purposes of enhancing the period of revocation. The court of appeals rejected that argument on the ground that section 321J.8 was clear on its face and required only that the officer advise the driver of the period of revocation. *Id.* at 610.

Primm argues that intervening amendments to section 321J.8 changed the law since *Smith*. We disagree. The changes in section 321J.8 were largely semantic; the prior wording "license or operating privilege" was replaced by the phrase "motor vehicle license or nonresident operating privilege." (The DOT argues that this was merely to make it clear that nonresidents were covered as well as residents, and we believe this is a reasonable explanation.) Also, the original phrase in section 321J.8 "revoked by the department for the applicable period under sections ..." was replaced by the phrase "revoked by the department *as required by* and for the applicable period specified under sections...." (Emphasis added.)

Whatever the reasons for these changes, there is no hint in the explanation to the legislative act or in the language of the statute itself suggesting that the legislature intended to expand the content of the advisory notice to include advice about ineligibility for a temporary license. We reverse the judgment of the district court and remand for further proceedings.

**REVERSED AND REMANDED.**