RONALD HAGAN ET AL., APPELLANTS, V. UPPER REPUBLICAN NATURAL RESOURCES DISTRICT, A POLITICAL SUBDIVISION OF THE STATE OF NEBRASKA, ET AL., APPELLEES.

622 N.W. 2d 627

Filed March 2, 2001.   No. S-99-374.

Amy Svoboda, of Gregory J. Beal & Associates, P.C., for appellants.

G. Peter Burger, of Burger & Bennett, P.C., for appellees Champion Valley Enterprises, L.L.C., Steve Leibbrandt, and Tim Leibbrandt.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

NATURE OF CASE

The plaintiffs, Ronald Hagan, Troy Brandt, and Todd Hatcher, filed a petition in the district court seeking declaratory

relief against the Upper Republican Natural Resources District (NRD); Champion Valley Enterprises, L.L.C. (Champion Valley); and Steven Leibbrandt and Tim Leibbrandt, individually. The district court sustained the defendants' demurrers to the plaintiffs' amended petition on the basis of standing and dismissed the plaintiffs' petition. The plaintiffs appealed, and the Nebraska Court of Appeals reversed the judgment of the district court and remanded the cause with directions to reinstate the petition. See *Hagan v. Upper Republican NRD*, 9 Neb. App. 289, 610 N.W.2d 751 (2000). We granted the defendants' petition for further review. For the reasons stated herein, we affirm the judgment of the Court of Appeals.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are alleged in the plaintiffs' operative amended petition: The plaintiffs are residents of the NRD and are irrigators and landowners. Champion Valley and the Leibbrandts are also residents of the NRD.

During the period relevant to this action, the NRD had adopted a moratorium on new well construction. The plaintiffs, Champion Valley, and the Leibbrandts were all similarly situated in the moratorium area. During the summer of 1998, the plaintiffs applied to the NRD for an allocation of underground water for crop irrigation purposes. Champion Valley and the Leibbrandts applied to the NRD for a variance to allow use of underground water sufficient to operate hog confinement facilities. The plaintiffs were denied the variances for which they had applied. On or about July 7, 1998, Champion Valley and the Leibbrandts entered into separate settlement agreements with the NRD, which allowed Champion Valley and the Leibbrandts the use of underground water that was originally the subject matter of their application for a variance.

The plaintiffs filed a petition in the district court seeking declaratory relief against the defendants. Specifically, the plaintiffs sought a declaration that the agreements Champion Valley and the Leibbrandts entered into with the NRD were illegal and void. The critical allegation contained in the plaintiffs' operative amended petition, with respect to the question of standing, is as follows:

That, in addition, Defendants have drawn water from the same aquifer as the aquifer that underlies Plaintiffs' land, and therefore the Plaintiffs are injured in that there is less water available for them for future requests in that the now declining water table of the aquifer will decline further by virtue of the withdrawal of the water by the Defendants.

The defendants demurred in part on the basis of standing. The district court sustained the demurrers, stating that "[t]he Plaintiffs attempt to claim special status or injury as irrigators and neighbors, but, that status is no different than all the members of the general public residing within the jurisdiction of the natural resource district." The district court further found that there was no possibility that the plaintiffs could further amend their petition to allege facts which would show standing to bring the action. The district court dismissed the petition, and the plaintiffs appealed.

The Court of Appeals reversed the judgment of the district court. See *Hagan v. Upper Republican NRD, supra.* The Court of Appeals determined that the plaintiffs, as landowners and irrigators, had an interest in protecting the limited water supply underlying their lands. *Id.* We granted the defendants' petition for further review.

## ASSIGNMENT OF ERROR

The defendants assign that the Court of Appeals erred in finding that the plaintiffs' amended petition alleged facts sufficient to confer standing upon the plaintiffs to invoke the jurisdiction of the district court.

## STANDARD OF REVIEW

■ In an appellate court's review of a ruling on a demurrer, the court is required to accept as true all the facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the conclusions of the pleader. *Noffsinger v. Nebraska State Bar Assn., ante* p. 184, 622 N.W.2d 620 (2001).

■ In considering a demurrer, a court must assume that the facts pled, as distinguished from legal conclusions, are true as alleged and must give the pleading the benefit of any reasonable

inference from the facts alleged, but cannot assume the existence of facts not alleged, make factual findings to aid the pleading, or consider evidence which might be adduced at trial. *Tilt-Up Concrete v. Star City/Federal, ante* p. 64, 621 N.W.2d 502 (2001).

## ANALYSIS

The defendants argue that the district court correctly found the plaintiffs to be without standing to challenge the settlement agreements. Standing relates to a court's power, that is, jurisdiction, to address the issues presented and serves to identify those disputes which are appropriately resolved through the judicial process. *Mutual Group U.S. v. Higgins,* 259 Neb. 616, 611 N.W.2d 404 (2000). As an aspect of jurisdiction and justiciability, standing requires that a litigant have such a personal stake in the outcome of a controversy as to warrant invocation of a court's jurisdiction and justify the exercise of the court's remedial powers on the litigant's behalf. *Miller v. City of Omaha,* 260 Neb. 507, 618 N.W.2d 628 (2000).

In order to have standing to invoke a tribunal's jurisdiction, one must have some legal or equitable right, title, or interest in the subject of the controversy. *Mutual Group U.S., supra; Ritchhart v. Daub,* 256 Neb. 801, 594 N.W.2d 288 (1999). In order for a party to establish standing to bring suit, it is necessary to show that the party is in danger of sustaining direct injury as a result of anticipated action, and it is not sufficient that one has merely a general interest common to all members of the public. *Neb. Against Exp. Gmblg. v. Neb. Horsemen's Assn.,* 258 Neb. 690, 605 N.W.2d 803 (2000); *Ritchhart, supra.*

In support of their argument, the defendants rely upon our recent decisions in *Ritchhart, supra,* and *Neb. Against Exp. Gmblg., supra.* Those cases, like the instant case, dealt with the alleged ultra vires acts of public officials. In *Ritchhart,* a citizen of Omaha sued several Omaha public officials, claiming that an alleged agreement among those officials was illegal and void. In *Neb. Against Exp. Gmblg.,* a taxpayer and a nonprofit corporation opposed to the proliferation of gambling sued the commissioners of the Nebraska State Racing Commission, alleging the illegality of licenses granted by the commission to simulcast

horseraces. In both cases, we determined that the plaintiffs lacked standing to sue. We stated:

> A person seeking to restrain the act of a public board or officer must show special injury peculiar to himself or herself aside from and independent of the general injury to the public unless it involves an illegal expenditure of public funds or an increase in the burden of taxation.

*Id.* at 693, 605 N.W.2d at 807, citing *Ritchhart, supra.*

Because the plaintiffs in *Neb. Against Exp. Gmblg., supra,* alleged neither a special injury peculiar to themselves nor an illegal expenditure of public funds or increase in the burden of taxation, we affirmed the district court's judgment sustaining the defendant's demurrer and dismissing the plaintiffs' petition on the basis of standing. Similarly, in *Ritchhart, supra,* because the plaintiff did not show a special injury or any basis for an exception to the special injury requirement after a trial on the merits, we reversed the judgment of the district court in favor of the plaintiff and remanded the cause with directions to dismiss the petition.

In the instant case, the plaintiffs have not alleged an illegal expenditure of public funds or an increase in the burden of taxation. The issue then is whether the plaintiffs have alleged facts sufficient to show a special injury peculiar to themselves. In this regard, we find that the facts alleged in the plaintiffs' amended petition distinguish this case from *Ritchhart, supra,* and *Neb. Against Exp. Gmblg., supra.*

The plaintiffs have alleged that they are landowners and irrigators who were denied variances and that they will be injured by the depletion of the aquifer underlying their lands resulting from the allegedly illegal agreements. Ground water is owned by the public, but the overlying landowner has a right to use of the ground water. See, *Bamford v. Upper Republican Nat. Resources Dist.*, 245 Neb. 299, 512 N.W.2d 642 (1994); *In re Application U-2*, 226 Neb. 594, 413 N.W.2d 290 (1987).

In *Ponderosa Ridge LLC v. Banner County*, 250 Neb. 944, 554 N.W.2d 151 (1996), several landowners objected to an application for a permit to transfer ground water to Wyoming from a well in Nebraska. The director of the Department of Water Resources determined that the expected impact of the well on future demand for ground water was unclear and denied the

application. The applicant appealed. This court considered the standing of the objectors to challenge the application. We determined that two of the objectors had water use interests to protect, but that the remaining objectors did not. *Id.* Consequently, we concluded that the objectors who had water use interests had standing to object to the well permit application. *Id.*

Similarly, in *Ainsworth Irr. Dist. v. Bejot*, 170 Neb. 257, 102 N.W.2d 416 (1960), the Ainsworth Irrigation District sought an appropriation of water from the Snake River for irrigation purposes. A number of landowners objected, but the appropriation was approved by the Department of Water Resources, and the objectors appealed. The irrigation district challenged the standing of the objectors, but we determined that the landowners within the irrigation district would be legally affected by the appropriation and had a legal interest in the proceeding. *Id.*

We recognize that unlike *Ponderosa Ridge LLC, supra*, and *Ainsworth Irr. Dist., supra*, this is not an appeal from an application for an appropriation of water, but is, instead, like *Ritchhart v. Daub*, 256 Neb. 801, 594 N.W.2d 288 (1999), and *Neb. Against Exp. Gmblg. v. Neb. Horsemen's Assn.*, 258 Neb. 690, 605 N.W.2d 803 (2000), an action alleging an ultra vires act on the part of public officials. However, the question presented in this appeal does not relate to the underlying nature of the action, but is simply whether the plaintiffs have alleged a special injury which distinguishes their interests from those of the general public.

The plaintiffs have alleged, as landowners and irrigators whose requests for variances were denied, that the agreements entered into by the defendants will adversely affect the plaintiffs' water use interests because the water use of Champion Valley and the Leibbrandts will deplete the aquifer underlying the plaintiffs' properties. As in *Ponderosa Ridge LLC, supra*, and *Ainsworth Irr. Dist., supra*, these allegations are sufficient to distinguish the plaintiffs' injury from that shared by the general public and demonstrate the plaintiffs' standing to maintain the action.

Whether the plaintiffs will be able to present evidence to substantiate these allegations, either at trial or on hearing for sum-

mary judgment, is a matter that was not before the district court and is not before us. In other words, the defendants are not precluded from preserving and/or asserting a standing challenge at a later time if the plaintiffs are unable to prove that the defendants' use of the underground water would so deplete the aquifer as to injure the plaintiffs' water use interests. The plaintiffs, however, have adequately pled that the depletion of the aquifer will injure their water use interests, and in reviewing a demurrer, we are required to accept this fact as true and not to consider the evidence that might be adduced at trial. See, *Tilt-Up Concrete v. Star City/Federal, ante* p. 64, 621 N.W.2d 502 (2001); *Doksansky v. Norwest Bank Neb.*, 260 Neb. 100, 615 N.W.2d 104 (2000).

## CONCLUSION

Therefore, we conclude that the Court of Appeals correctly determined that the district court erred in sustaining the defendants' demurrer to the plaintiffs' amended petition on the basis of standing and in dismissing the amended petition. Accordingly, the Court of Appeals was correct in reversing the judgment of the district court and remanding the cause with direction to reinstate the plaintiffs' amended petition. We affirm the judgment of the Court of Appeals.

AFFIRMED.